HENDERSON et al. v. HENSHALL.

(Circuit Court of Appeals, Ninth Circuit. January 30, 1893.)

No. 69.

1. DECEIT—FALSE REPRESENTATIONS.
   To induce plaintiff to make an exchange of lands, defendant stated that the tract owned by him contained about 560 acres, mortgaged for $3,000, was worth $32 an acre; that 80 acres were fenced, 160 planted, and 240 cleared; and to prevent inspection of the land assured plaintiff's husband that the representations could be relied on, and introduced a person, represented as a wealthy banker, as one who was disinterested, and knew all about the land. Such person repeated the representations, and plaintiff's husband executed a contract of exchange. Plaintiff, desiring an op-

portunity to determine the quality and condition of the land before exe-cuting a deed, was dissuaded therefrom by defendant's repetition of the representations, and statements that examination was unnecessary, that the transaction must be closed at once, and threats of legal proceedings; and thereupon the deeds were executed. In fact, the land was wild, rocky, and unfit for cultivation, mortgaged for $700, worth but $5 per acre, no part was cleared, cultivated, or planted except about four acres, and no part was fenced. *Held,* that these facts constituted a cause of action for damages for false representations.

2. APPEALABLE ORDERS—RULING ON MOTION TO DISMISS.
The circuit court of appeals will review a decision of the circuit court denying a motion to dismiss an action on the ground that it abated by the death of the original plaintiff, where such motion involves the jurisdiction of the court over the parties to the action.

3. SURVIVAL OF ACTIONS—ACTION FOR DECEIT.
Under Civil Code Cal. §§ 953, 954, defining a thing in action, and provid-ing that, when arising out of a right of property, on the death of the owner it passes to his personal representatives, a cause of action for damages by reason of false representations as to the value of land, whereby one is in-duced to part with his land in exchange, will survive.

In Error to the Circuit Court of the United States for the North-ern District of California.

Action by Mary Alice Henshall against Charles Henderson, W. D. Holcom, and John Purcell for damages for false representations leading to an exchange of lands. Plaintiff having died pending the suit, John Henshall, special administrator of her estate, was substi-tuted as plaintiff. Defendants moved to dismiss the action, on the ground that it had abated by the death of the original plaintiff, and for judgment on the ground that the complaint failed to state a cause of action. The motion was denied, and judgment was entered on verdict for plaintiff as against defendants Henderson and Holcom. Said defendants bring error. Affirmed.

Dorn & Dorn, for plaintiff in error Charles Henderson.

W. G. Witter, (S. C. Denson, of counsel,) for plaintiff in error W. D. Holcom.

Norman H. Hurd, for defendant in error.

Before McKENNA, Circuit Judge, and MORROW, District Judge.

MORROW, District Judge. This was an action at law commenced in the circuit court by Mary Alice Henshall, a citizen of the king-dom of Great Britain, against Charles Henderson, W. D. Holcom, and John Purcell, citizens of the state of California, to recover the sum of $30,000 for damages alleged to have been sustained by plain-tiff in the exchange of certain lands in California. It is charged that false representations were made by the defendants Henderson and Holcom as to the value, character, and quality of certain lands in Shasta county, whereby they induced the plaintiff to exchange her lands in Tulare county for the lands in Shasta county, to her damage in the amount stated. The defendants demurred to the complaint, and the demurrers were sustained. An amended com-plaint was filed, to which demurrers were interposed, alleging, among other things, that the complaint did not state facts sufficient to constitute a cause of action. The demurrers were overruled, and

the derendants thereupon answered. Thereafter, upon the written suggestion of the death of the plaintiff, it was ordered by the court that John Henshall, special administrator of the estate of Mary Alice Henshall, deceased, be substituted as plaintiff. There was a jury trial, and a verdict and judgment against the defendants Henderson and Holcom for $6,000, and the defendants sued out this writ of error.

It appears from the bill of exceptions that when the case was called for trial, and before the jury had been impaneled and sworn, the defendants moved the court to dismiss the action, on the ground that it had abated by the death of the original plaintiff; that the cause of action did not survive her death; and that John Henshall, as special administrator, could not maintain the action. The motion was denied, and defendants excepted. It further appears that during the trial of the case, and after all the evidence had been introduced on behalf of the plaintiff, and he had rested, and before the defendants had introduced any evidence on their part, the defendants moved the court to instruct the jury to render a verdict in favor of the defendants, upon the ground that the amended complaint did not state facts sufficient to constitute a cause of action. The motion was granted as to the defendant Purcell, but denied as to the other defendants, who duly excepted.

The case presents two questions for determination: (1) Whether the complaint states facts sufficient to constitute a cause of action. (2) Did the action abate by the death of the plaintiff?

The complaint alleges, among other things, that the tract of land owned by plaintiff in Tulare county contained 440 acres; that it was her separate property, and was all agricultural or farming land of the best quality, of the value of $75 per acre. The complaint charges that the defendants conspired with each other to defraud the plaintiff, and deprive her of said land; that the defendant Henderson, in pursuance of the conspiracy, and with intent to defraud the plaintiff, falsely stated to John Henshall, plaintiff's husband, that he (Henderson) was about to become the owner of a ranch or tract of land in Shasta county, Cal., containing about 560 acres, of the value of $32 per acre; that there was a mortgage on the land for the sum of $3,000; that there was a fence around 80 acres of the land; that 160 acres had been planted in grain, and 240 acres had been cleared; that Henderson proposed to exchange the tract of land in Shasta county for plaintiff's tract of land in Tulare county, whereupon Henshall suggested that it would be better for him to visit the land in Shasta county, and inform himself as to the quality and condition of the land, but Henderson represented that it was not necessary for Henshall to do so; that he could rely upon his (Henderson's) representations. The complaint further charges that Henderson represented to Henshall that his real-estate business was extending and becoming so large that he could not conduct it alone, and he proposed to form a partnership, and take Henshall in as one of the partners; that he (Henderson) was a church member and a Christian. It is charged also that Henderson referred Henshall to the defendant Holcom, representing that the latter was a wealthy

banker and resident of Yolo county, above suspicion, and entirely disinterested, and that he knew all about the Shasta county land; that Henderson thereupon introduced Henshall to Holcom; that the latter repeated to Henshall all the statements previously made by Henderson; that Henshall, relying upon and believing that all of said representations were true, gave to Henderson a writing purporting to agree to an exchange of the land in Tulare county, subject to a mortgage for $7,000, for the land in Shasta county, subject to a mortgage for $3,000. It is alleged in the complaint that Henshall did not have the legal authority to bind the plaintiff, but he acted upon the belief that plaintiff would acquiesce in his suggestions in regard to her property. It is further alleged that, after delivering the agreement for the exchange of plaintiff's land in Tulare county for the lands mentioned in Shasta county, Henshall wrote to Henderson that the transaction had better be left in abeyance until he could better inform himself as to the condition and value of the land in Shasta county, whereupon Henderson, in pursuance of the conspiracy, and with the intention of intimidating and defrauding plaintiff, went to her, and falsely stated that he had already sold the land in Tulare county to the defendant Purcell, who was in great haste to go into possession, and, unless the trade was carried out, the purchaser would "law him," and he in turn would "law her;" and, further, that he was in possession of papers signed by her husband, which he would at once record in Tulare county; that, for the purpose of deceiving and defrauding plaintiff, Henderson repeated to her all the representations made to her husband as to the character, value, and quality of the land in Shasta county, and stated that the whole of the land could be cultivated; that it was not necessary to make any examination of the land, but that it was necessary to close up the transaction at once. It was alleged that plaintiff believed these representations, and was induced by them and by threats and through fear to sign an agreement concurring in the previous agreement made by her husband for the conveyance of her lands in Tulare county to Henderson, and thereafter, in pursuance of further representations made to herself and husband as to the character, quality, and value of the land in Shasta county, and being urged by Henderson to close up the matter at once, to avoid trouble she executed a deed conveying to Henderson her land in Tulare county, and took from him a deed for the land in Shasta county, but without an opportunity to examine into its value and character.

There are other allegations in the complaint relating to the detail of this transaction, but enough has been stated to disclose the basis of the charge of misrepresentation and fraud contained in the closing paragraphs of the complaint as follows:

"As a matter of fact, the said land in Shasta county was at all said times the property of the defendant Holcom, and he conveyed it to the defendant Henderson on the thirteenth (13) day of September, 1890, for the purpose of carrying out the said conspiracy. No mortgage for three thousand dollars, ($3,000) or any sum except seven hundred dollars, ($700,) was on said land before said exchange. The true value of said land in Shasta county was at all the times aforesaid, and is now, five dollars ($5) per acre. No part of said

land was ever cleared, cultivated, or sown in grain, except about four (4) acres thereof, and no part of said land was ever fenced. The whole of said land, with said exceptions, is wild, uncleared land, and a large part thereof is rocky, and unfit for cultivation. The defendants well knew that all of the said representations made by them, and by each of them, were untrue. In further pursuance of said conspiracy, and for the purpose of preventing the plaintiff from rescinding said transaction, the defendant Henderson did, immediately after obtaining the said conveyance of said land from this plaintiff, convey the said land to a sister of said defendant John Purcell, who had represented, as hereinbefore alleged, that he was in great haste, and was very anxious to purchase said land; and the said land now remains in the possession of said sister of the defendant Purcell, and said Purcell has never become the owner thereof, nor has he ever moved upon the same, or lived there."

It is contended on behalf of the plaintiffs in error that the facts stated in the complaint are not sufficient in law to support the judgment; that the representations as to the land in Shasta county were made with respect to matters equally within the power of both parties to ascertain; that the doctrine of caveat emptor applies in such a case, and to such representations; and that, where a buyer could by reasonable or ordinary diligence have discovered the truth, the law provides no remedy for damages sustained under such circumstances. It is undoubtedly the law that a party to a contract is required to exercise reasonable care and caution to prevent being defrauded. He must not close his eyes to matters directly before him, and, when he finds he has been deceived, expect favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of others. Slaughters' Adm'r v. Gerson, 13 Wall. 379–383. But is this the position of the defendant in error? It appears from the complaint, the allegations of which, for the present purpose, must be accepted as true, that the negotiations in this case took place and the bargain was consummated in San Francisco. Now, while it may not be within the province of the court to take judicial notice of the distance from San Francisco to Shasta county, nevertheless it sufficiently appears from the complaint that the land was not near enough to the purchaser to afford her or her husband an opportunity for an immediate and convenient inspection. It is alleged in relation to the first negotiations that John Henshall proposed to visit the land in Shasta county, and inform himself as to its quality and condition, but was dissuaded therefrom by Henderson, who said that it was not necessary to do so, as Henshall could rely upon his representations. Then followed the preliminary agreement between Henshall and Henderson, and, soon after, Henshall, in a letter to Henderson, suggested that the transaction be held in abeyance until he could better inform himself as to the condition and value of the land. Then again, after the second agreement, and before the conveyance of the land, there was a renewal of the proposition by the purchaser to ascertain its value and character. To these suggestions Henderson urged haste in closing up the transaction, giving such reasons therefor as would have a tendency to influence the purchaser to close the bargain without an examination of the premises. From these allegations we are authorized to draw the conclusion that the land was not

conveniently accessible to the purchaser, and this conclusion is further confirmed by the direct averment that the plaintiff did not have an opportunity to examine into the value and character of the land.

In face of the allegations, how can it be said that the representations were made with respect to matters equally within the power of both parties to ascertain, and that the purchaser voluntarily closed her eyes to matters directly before her? The land was at a distance. Representations had been made respecting matters not within the knowledge of the purchaser. She desired to make an examination, or have one made. The vendor urged that it was not necessary, and pressed the bargain to a conclusion with urgent persuasion to overcome the manifest disposition of the purchaser not to proceed without proper care and caution. The complaint is certainly sufficient in this particular to show that the purchaser was being taken at a disadvantage in the matter of the examination of the land.

We come now to the allegations of the complaint respecting the false representations made by the vendor, and here we find an explanation of his urgency in consummating this trade. He is charged with having stated that the land was of the value of $32 per acre, while its true value was only $5 per acre; that there was a mortgage on the land for the sum of $3,000, while the only mortgage on the premises prior to the exchange was one for $700; that there was a fence around 80 acres of the land, while the fact was that there was no fence around any part of the tract; that 160 acres had been planted in grain, and 240 acres cleared, while the truth was that no part of the tract had ever been cleared, cultivated, or sown in grain, except about 4 acres, and the whole of the tract, with the exception named, was wild, uncleared land, and a large part of it rocky, and unfit for cultivation. Counsel for plaintiffs in error cite a number of cases to the effect that an action will not lie for a false representation by the vendor concerning the value of the thing sold, for the reason that value is a matter of judgment about which men may differ. But falsely stating the number of acres cleared, under cultivation, and inclosed in a tract of land is a very different representation from that of value, particularly when the statement is so far from the actual fact as to exclude it absolutely from the domain of opinion. The statement that there was a mortgage on the premises for $3,000, when the only mortgage on the place was for $700, was also a false representation as to a fact concerning which there could be no two opinions. The significance of the statement concerning the amount of the mortgage is disclosed when we consider the allegations of the complaint that the true value of the land was only $5 per acre, or $2,800 for the whole tract, and that the vendor in the exchange secured a mortgage from the purchaser for the sum of $3,000. None of the cases cited go to the extent of protecting a vendor in such a transaction as we find described in this complaint. In Sherwood v. Salmon, 2 Day, 128, the plaintiffs in error find authority for invoking the principle of caveat emptor as applicable to some of the facts in this case, but that case was expressly overruled in a suit in equity between

the same parties in 5 Day, 448, where it is declared that the former case was a departure from principle and precedent, and was not of binding authority. In the latter case the court followed the law as laid down by Lord Holt in the leading case of Lysney v. Selby, 2 Ld. Raym. 1118, establishing the doctrine "that a fraudulent misrepresentation or false assertion respecting a fact material to show the value of the land, by which the purchaser is injured, will subject the seller to an action for the deceit, though it was in the power of the purchaser to ascertain whether the representations were true or not."

Van Epps v. Harrison, 5 Hill, 63, is also cited in support of the position taken by the vendor in this case. There are some expressions in the opinion of Judge Bronson apparently favorable to that view of the law, but his opinion does not appear to have been entirely concurred in by the court, and the doctrine of the case as determined by the judgment of the court is clearly opposed to some of the statements contained in the opinion. The action was debt on bond. Plea, non est factum, with notice of special matter. Under this plea the defendant offered evidence in bar of the action to the effect that the bond sued on was given for part of the purchase money of certain land purchased by the defendant of the plaintiff at Greenbush, opposite Albany, N. Y. The transaction appears to have taken place in New York city. The land was purchased for the purpose of being laid out and sold for building lots, and the vendor knew it. He also knew, and the purchaser did not know, the condition and situation of the land. The vendor falsely and fraudulently represented that the land was even and level, well situated for building lots, and required no grading, all of which was false; and this false representation the defendant offered to prove, but the evidence was rejected. The defendant also offered to prove that the vendor represented that he had just paid $32,000 for the land, when in truth he had only paid one half that sum, and this evidence was also rejected. The question in the supreme court was as to the admissibility of the evidence to prove such a fraud as would give the defendant an action of damages which might be allowed in the suit. The supreme court held that the evidence was admissible. The case, as stated by Judge Bronson, is an instructive authority in the application of the law to a state of facts much less favorable to the purchaser than in the case at bar; indeed, it seems remarkable that the principle of caveat emptor was not applied to the transaction involved in the case. "It will seem marvelous," says the judge, "if not wholly incredible, to those who did not live in the years 1835–36, that men should purchase lands lying within ten hours' ride of their residence, and agree to pay thirty-two thousand dollars, without ever having taken the trouble to look at the property either in person or by agent. But farms in the vicinity of cities and villages were then so much in demand for the building of new towns that many persons thought it best not to hazard the loss of a bargain by stopping to look or inquire, when they could purchase at a thousand dollars per acre. They might better lose the little sum of thirty-two

thousand dollars than be absent one whole day from Wall street, and thus miss the possible chance of purchasing the site of some other prospective city of much greater magnitude. Wonderful as it may seem to the next generation, such things did happen, and in this case the defendant offered to prove that he knew nothing about the land, except that it lay on the opposite side of the river from the city of Albany. He trusted to the representations of the plaintiff in relation to the condition of the property, and the only question is whether the defendant must charge the loss upon his own folly and the madness of the times, or whether the plaintiff has done such a wrong as may be redressed by action. The credulity of the defendant furnishes but a poor excuse for the falsehood and fraud of the plaintiff, and the latter will have no just ground for complaint if he is held responsible for his misconduct." If, in such a case, the purchaser is entitled to prosecute an action for damages against the vendor for false representations as to the condition and price paid by the latter for a tract of land, then certainly there can be no question about the right of the purchaser to maintain such an action under the circumstances described in the complaint in the present case.

In Page v. Parker, 43 N. H. 363, the supreme judicial court of New Hampshire expressly affirms the doctrine declared in Van Epps v. Harrison; but in discussing the rule of damages for false and fraudulent representations the court makes a distinction, pertinent to that case, between representations concerning material and immaterial matters, and between misrepresentations fraudulently and those honestly made. No such distinction as to the rule of damages arises in this case. The question for us to decide is as to whether any one or all of the false representations charged to have been made by the vendor, taken in connection with the allegations as to damages, constitute a cause of action. In this limited field of inquiry many of the authorities cited by the counsel for the plaintiffs in error are inapplicable, and none support his position to the extent he claims. Moreover, the rules of law fixing the rights and liabilities of the parties to such a transaction are well established, as will appear by reference to a few of the leading cases.

In Vernon v. Keys, 12 East, 632, Lord Ellenborough declared the doctrine as follows:

"A seller is unquestionably liable to an action of deceit if he fraudulently misrepresents the quality of the thing sold to be other than it is in some particulars, which the buyer has not equal means with himself of knowing; or if he do so in such a manner as to induce the buyer to forbear making the inquiry which, for his own security and advantage, he would otherwise have done."

In Smith v. Richards, 13 Pet. 26, the action was to set aside a contract for fraud based upon certain false representations concerning a gold mine in Virginia. The contract was made in New York. The purchaser did not visit the mine, but relied upon the representations of the vendor, which were found to be false. In sustaining the action the court said:

"We think we may safely lay down the principle that whenever a sale is made of property not present, but at a remote distance, which the seller

knows the purchaser has never seen, but which he buys upon the representation of the seller, relying upon its truth, then the representation, in effect. amounts to a warranty; at least that the seller is bound to make good the representation."

In Stewart v. Cattle Ranche Co., 128 U. S. 383, 9 Sup. Ct. Rep. 101, the action was brought by the Wyoming Cattle Ranch Company, a British corporation, having its place of business at Edinburgh, in Scotland, against John T. Stewart, a citizen of Iowa, for damages alleged to have been sustained by the plaintiff in the purchase of a herd of cattle in the territory of Wyoming, upon the false representation of the defendant as to the number of cattle in the herd. A provisional agreement for the purchase of the cattle was entered into between the parties upon condition that a person appointed by the plaintiff should make a favorable report, whereupon one Clay was appointed such agent, who went out to Wyoming, visited the ranch, made an examination, reported favorably, and the purchase was completed. On the trial Clay testified that in the course of his interviews with the defendant the latter made to him the false representations alleged in the petition, and requested him to rely on these representations, and not to make inquiry from the foreman or other persons; and that, relying on these representations, he made a favorable report to the plaintiff, which thereupon completed the purchase. The representations were to the effect that there had already been branded 2,800 calves as the increase of the herd for the current season; that the whole branding of calves and increase of the herd for that season would amount to 4,000, and that, exclusive of the branding for that year, the herd consisted of 15,000 head of cattle; and it was alleged in the petition that, had the representation been true that 2,800 calves had been branded, it was reasonable from that fact to estimate that the whole branding for that year would be 4,000 head, and that the whole herd, exclusive of the increase for that year, was 15,000 head. It appears that, had the agent prosecuted his inquiries, he would have obtained information that less than 2,000 calves had been branded. The testimony was conflicting as to whether the defendant did make the representation that 2,800 calves had been branded in that year, and the chief importance of that misrepresentation, if made, was that it tended to show that the herd of cattle which produced the calves was less numerous than the defendant had represented. The case turned upon the question as to whether the defendant made such a misrepresentation, and, if made, whether the defendant persuaded the agent not to make an inquiry as to its correctness. In submitting the case to the jury the court gave several instructions as to the law applicable to the conduct of the vendor as disclosed by the testimony, among others the following:

"If the testimony satisfies you that when they (the agent, Clay, and the defendant) did go there together, and whilst Clay was making efforts to procure the information which he did, and whilst he was in pursuit of it, and while he was on the right track, Stewart would have no right to throw him off the scent, so to speak, and prevent him in any fraudulent and improper way from procuring the information desired; and if he did that, that itself is making, or equal to making, false and fraudulent representations for the purpose in question."

The court also gave the following instructions:

"If the jury find from the evidence that Stewart purposely kept silent when he ought to have spoken and informed Clay of material facts, or find that by any language or acts he intentionally misled Clay about the number of cattle in the herd, or the number of calves branded in the spring of 1882, or by any acts of expression or by silence consciously misled or deceived Clay, or permitted him to be misled or deceived, then the jury will be justified in finding that Stewart made material misrepresentations, and must find for the plaintiff, if the plaintiff believed and relied upon the misrepresentations made by the defendant."

The supreme court held that these instructions conformed to the well-settled law. The opinion indicates, however, that the instructions were assailed mainly because they went to the extreme length of holding that the silence of the vendor as to a material fact was equivalent to a false representation, and upon this point the court observed:

"In an action of deceit it is true that silence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation. But mere silence is quite different from concealment. 'Aliud est tacere, aliud celare.' A suppression of the truth may amount to a suggestion of falsehood, and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose, this is evidence of, and equivalent to, a false representation, because the concealment or suppression is, in effect, a representation that what is disclosed is the whole truth."

But in the case at bar the vendor did not remain silent. He did not merely conceal or suppress the truth, but made false representations as to material facts, and when the purchaser proposed to seek for correct information he dissuaded her from prosecuting the inquiry, and thus prevented her from obtaining the information desired. Under such circumstances, the vendor cannot escape responsibility by claiming that the purchaser might have ascertained that such representations were untrue. Bank v. Hiatt, 58 Cal. 234. "The seller must not resort to artifice, fraud, or falsehood in misleading the buyer as to facts of which the latter is ignorant, and which are material for him to know." Senter v. Senter, 70 Cal. 619, 11 Pac. Rep. 782.

If we look now to the character of the representations made by the vendor in this case, we will find that they relate to matters material for the purchaser to know in determining for himself the value of the property. The representation of the vendor that the value of the land was $32 per acre may be dismissed as the expression of an opinion. We may also pass the statement about the mortgage, as that representation might have been easily verified by the record; but when the vendor went further, and stated that 80 acres had been fenced, 160 acres planted in grain, and 240 acres cleared, he assumed to state facts upon which the purchaser might well, without an examination, base an opinion as to the value of the property.

In the case of Ladd v. Pigott, 114 Ill. 648, 2 N. E. Rep. 503, the action was for deceit and fraud practiced by the defendant in the sale and exchange of property. The plaintiff recovered a judgment. It was objected on appeal that the evidence did not sustain the case

as stated in the declaration, and for that reason the motion for a nonsuit should have been sustained. The opinion of the court indicates that the representations made by the vendor were substantially to the same effect as those alleged to have been made in the present case. The court said:

"The representations made by defendant as to the property situated in Kansas, which he was about to exchange with plaintiff, were much more than mere expressions of opinion as to its value and desirableness. Falsely stating the quantity of land contained in a certain tract, and the size and character of the improvements situated thereon, is quite a different thing from expressing a mere opinion concerning them."

In Andrus v. Refining Co., 130 U. S. 643--648, 9 Sup. Ct. Rep. 645, the supreme court held that the purchaser of a lot of land in the town of Leadville, Colo., could not maintain an action against the vendor upon a false representation that he could put the purchaser in immediate possession of the land sold, but it declared that "false and fraudulent representations upon the sale of real property may undoubtedly be ground for an action for damages when the representations relate to some matter collateral to the title of the property and the right of possession which follows its acquisition, such as the location, quantity, quality, and condition of the land, the privileges connected with it, or the rents and profits derived therefrom;" citing Lysney v. Selby, 2 Ld. Raym. 1118; Dobell v. Stevens, 3 Barn. & C. 623; Monell v. Colden, 13 Johns. 395; Sandford v. Handy, 23 Wend. 260; Van Epps v. Harrison, 5 Hill, 63. To the same effect are the following: Anderson v. Hill, 12 Smedes & M. 679; Doggett v. Emerson, 3 Story, 700--733; Lynch v. Trust Co., 18 Fed. Rep. 486.

In whatever light, therefore, we may view the allegations of this complaint, we come to the conclusion that they are sufficient to state a cause of action.

The next question: Did the action abate by the death of the plaintiff? The defendants in the court below moved to dismiss the action on the ground that the special administrator had no power or capacity to maintain the suit, and that the cause of action alleged in the complaint abated by the death of the original plaintiff. The motion has been treated in the argument as in the nature of a plea in abatement, and it is urged that under section 1011 of the Revised Statutes of the United States the judgment cannot be reversed, even though the court below committed an error in denying the motion to dismiss the action. The section provides:

"There shall be no reversal in the supreme court or in a circuit court upon a writ of error, for error in ruling any plea in abatement other than a plea to the jurisdiction of the court, or for any error in fact."

The plaintiff in error contends that the motion was, in effect, a plea to the jurisdiction of the court, and therefore subject to review. The motion was to dismiss the action, and the ruling of the court upon the motion is brought here in the bill of exceptions. We think it is properly before the court for review.

For the determination of the principal question as to the survival of the cause of action resort must be had to the law of the state of California, where the cause of action arose. The following pro-

visions of the Civil Code have been cited as declaring the law on this subject:

Section 953. "A thing in action is a right to recover money or other personal property by a judicial proceeding." Section 954. "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except where, in the cases provided in the Code of Civil Procedure, it passes to his devisees or successor in office." Section 1427: "An obligation is a legal duty, by which a person is bound to do or not to do a certain thing." Section 1428: "An obligation arises either from (1) the contract of the parties, or (2) the operation of law. An obligation arising from operation of law may be enforced in the manner provided by law, or by civil action or proceeding." Section 1458: "A right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such."

It is urged that these provisions do not in express terms distinguish those things in action that survive from those that abate upon the death of the owner. There may be some question as to the survival of a thing in action arising out of a personal injury, but the thing in action in this case arises out of the violation of a right of property, which, by the express language of section 954 of the Civil Code, passes to the personal representatives of the deceased. Moreover, section 4 of the Civil Code provides the following rule of construction for its provisions:

"The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to this Code. The Code establishes the law of this state respecting the subjects to which it relates, and its provisions are to be liberally construed, with a view to effect its objects and to promote justice."

If we follow this rule, and construe the provisions of the Code liberally, with a view to effect its objects and to promote justice, we must determine that the cause of action in this case survived to the administrator as assets on his hands, because the wrong which is the subject of the action was not merely a personal injury inflicted upon the decedent, and the damages claimed the measure of her bodily or mental suffering, but the wrong was to the estate of the original plaintiff, whereby it became diminished in value. "It is now the general American doctrine that all causes of action arising from torts to property, real or personal,—injuries to the estate by which its value diminished,—do survive and go to the executor or administrator as assets in his hands." Pom. Rem. & Rem. Rights, § 147. We think, upon principle as well as authority, the cause of action in this case survived to the administrator. Judgment affirmed.