## WILSON v. HIGBEE.

### (Circuit Court, D. Nevada. July 2, 1894.)

### No. 566.

1. **DECEIT—PAROL EVIDENCE.**
    In an action for deceit in the sale of land, oral evidence of what occurred before and when the deed was signed is admissible to show the situation and intention of the parties, in order to explain an ambiguity in the deed.

2. **WATER RIGHTS—RESERVATION IN DEED.**
    A deed reserving to the grantor so much of the premises as may be needful to his full enjoyment of the waters of a certain creek, and all water rights and flowing water on or about the premises with right of free access, and of building and maintaining reservoirs, ditches, flumes, etc., on said premises, for mining purposes, reserves the water for mining purposes only, and without express words conveys it as appurtenant to the land for agricultural purposes.

3. **DECEIT—NEGLIGENCE OF PARTY INJURED.**
    A vendee is not deprived of his remedy for deceit because he might have learned the falsity of the vendor's statements from the public records.

4. **SAME—MISREPRESENTATIONS INDUCING PURCHASE.**
    A vendor by quitclaim deed is liable for his misrepresentations inducing the purchase.

Action for damages for deceit by Wilson against Higbee. Judgment for plaintiff.

James F. Dennis and Trenmor Coffin, for plaintiff.
J. L. Wines, for defendant.

HAWLEY, District Judge (orally). This is an action at law to recover damages for false representations, deceit, and fraud in the sale of land. It was commenced in the state court, and from thence removed, by the petition of defendant, on the ground of diverse citizenship of the parties, and was tried in this court without a jury.

The testimony shows that on the 26th of September, 1887, the defendant made, executed, and delivered to plaintiff a quitclaim deed of 92.12 acres of land, with the appurtenances. This deed, among other things, contained the following proviso, viz.:

"Provided always, nevertheless, and it is distinctly understood and agreed between the parties hereto, anything herein contained to the contrary notwithstanding, that said party of the first part expressly reserves from the operation of this conveyance, and retains and keeps unto himself and his heirs and assigns, forever, so much and all of said premises hereinbefore described as may be now or hereafter necessary to the free, full, and perfect enjoyment of and use by said party of the first part, his heirs and assigns, of, in, or to the waters of said Duck creek and its tributaries, and of all water, water rights, and privileges heretofore had or enjoyed by the said party of the first part and his grantors of, in, and about the said premises, or any part thereof, and all water that now flows or hereafter may flow upon, through, over, or across, upon the surface or otherwise, or in any manner, in and about said premises, together with the right of free access therefrom and thereto, as well to any portion as to the whole thereof, with the right to construct and maintain reservoirs, ditches, flumes, sewers, drains, or channels, and any and all thereof, upon, in, and about said premises, for mining purposes."

At the time of the execution and delivery of the deed, defendant represented to the plaintiff that he was the owner of the water of Duck creek, which, in its natural course, flowed over, upon, and through the land, and assured plaintiff that he could and would have this water for agricultural purposes, whereas the truth was that defendant did not then own the water, because he had conveyed the same to one John Leick long prior thereto, to wit, on the 21st day of April, 1887, and the deed conveying the water right was of record. Plaintiff could have ascertained these facts if he had taken the precaution to have the records examined, but he relied upon defendant's representations being true, and would not have purchased the property if he had known the facts concerning the prior sale of the water.

It was argued on behalf of defendant that the deed does not convey, or purport to convey, any water or water rights whatever, but, on the contrary, expressly contains an exception showing that the water was not intended to be conveyed.

Objection was made to the introduction of oral evidence as to what occurred prior to and at the time of the execution of the deed, as to the understanding of the parties in relation thereto. This testimony was admissible, not for the purpose of changing the terms of the deed, as claimed by defendant, but for the pur-

pose of explaining the situation, understanding, and intention of the respective parties. The intention of the parties, when it can be ascertained, is to govern in the construction of deeds, as well as other written contracts; and, if the language used in the deed is susceptible of more than one interpretation, it is the rule that courts will look at the situation of the parties, the object they had in view, and the surrounding circumstances existing at the time the contract was executed, as well as the subject-matter of the same; and, to this extent, extraneous evidence is admissible to aid in the construction of the instrument. French v. Carhart, 1 N. Y. 96; Bridger v. Pierson, 45 N. Y. 601; Pike v. Munroe, 36 Me. 309; 2 Devl. Deeds, § 990.

The land conveyed by the deed was arid, and of no value for agricultural purposes without the use of water to irrigate the same during the dry season. It was purchased by the plaintiff for agricultural purposes,—for a home for himself and family. The water of Duck creek, if not otherwise appropriated or conveyed, naturally belonged to, and was appurtenant to, the land, and would be conveyed with it, unless expressly excepted or reserved therefrom by apt and appropriate words in the deed. The defendant owned certain mines and a mill site in the cañon above this land, which, for successful operation, required the use of the water for mining and milling purposes. The water of the creek could be used by the defendant for such purposes without detriment to its use by the plaintiff for agricultural purposes. The deed was typewritten, and, when read over by plaintiff, the words "for mining purposes" were inserted at his request. Plaintiff testified that, "at the very hour and very moment that he [defendant] put his name to the instrument, he guarantied me the use of the water for agricultural purposes," and that there was no question whatever between them, at the time, but what the water should belong to him when the deed was executed. "I was to have the use of the water for agricultural purposes, and he was to have it for mining purposes only. * * * He told me, on every occasion, that he never sold any water to Leick. * * * Q. Did he say so when you took the deed of the property from him? A. Yes, sir. Q. Did he say so at the particular time that he delivered the deed to you? A. Yes, at that very moment." This testimony is not denied. It shows clearly, and beyond all question, that it was plaintiff's understanding, at least, that the deed conveyed the water to him for agricultural purposes, and that defendant reserved the right to use the same for mining purposes. But, independent of the testimony, I am of opinion that the language of the proviso in the deed is not susceptible of any other or different construction. It is true that there is no reference to the water in any other part of the deed. It was not absolutely essential that the water of the creek, if it flowed over or through the land in its natural course, should have been specifically mentioned, although it is usual and proper, and the best way, to mention the water right, in conveyances of this kind. But it was not necessary, as is claimed by defendant, that plaintiff should have first brought an action to have the deed

reformed, if it was the intention of the parties that the water, as well as the land, should be conveyed, because, as before stated, the water, if it belonged to the land, would pass as an appurtenant thereto. 2 Devl. Deeds, § 863; Farmer v. Water Co., 56 Cal. 11. It is true that the words "exception" and "reservation" are occasionally used indiscriminately; and it not infrequently happens, in a deed, that what purports to be a reservation has the force of an exception, or vice versa. 2 Devl. Deeds, § 980. Instances of construction to be given in particular cases are mentioned in 2 Devl. Deeds, § 989, and in the numerous authorities there cited. But I am of opinion that none of those cases, or of the other authorities cited and relied upon by defendant, viz. French v. Carhart, 1 N. Y. 96; Bridger v. Pierson, 45 N. Y. 601; Munn v. Worrall, 53 N. Y. 44; Marvin v. Mining Co., 55 N. Y. 538,—are in opposition to the conclusion reached, that the proviso in the deed in question was a reservation, pure and simple, of the defendant's right to use the water for mining purposes only.

2. Does the rule of caveat emptor apply to this case? The weight of authority is to the effect that a vendee has the right to rely upon the representations of the vendor as to material matters connected with the land; and especially is this so in all cases, like the present one, where the facts in relation to such matters are within the knowledge of the vendor, and unknown to the vendee. In such cases the vendee may rely upon such representations, although other means or opportunities might be afforded to him to ascertain the truth. He is not bound, under the law, to go to the expense or trouble of verifying the truth or falsity of the statements made by the vendor, and the vendor is estopped from asserting that the vendee might readily have ascertained the truth if he had examined the records of the county where the land was situated. The liability of the vendor arises from his own fraud and falsehood, and is not in any manner affected by the question of diligence upon the part of the vendee. The defendant had the right, if so disposed, to remain silent as to whether the water had been previously disposed of or conveyed to other parties, and if he had done so he would have been safe; but when he led the plaintiff astray by falsely representing the facts, and thereby induced him to make a purchase which he would not otherwise have made, it does not lie in defendant's mouth to say that plaintiff had no right to rely upon his representations. "The seller may let the buyer cheat himself ad libitum, but must not actively assist him in cheating himself." Banta v. Savage, 12 Nev. 151; Fishback v. Miller, 15 Nev. 428; Henderson v. Henshall, 4 C. C. A. 357, 54 Fed. 320, 329; and authorities there cited; Hil. Vend. 354; Matlock v. Todd, 19 Ind. 131; Kiefer v. Rogers, 19 Minn. 32 (Gil. 14); Walsh v. Hall, 66 N. C. 233; Hale v. Philbrick, 42 Iowa, 81; Bailey v. Smock, 61 Mo. 213; Upshaw v. Debow, 7 Bush, 443; David v. Park, 103 Mass. 501; Gammill v. Johnson, 47 Ark. 335, 1 S. W. 610; Graham v. Thompson, 55 Ark. 296, 18 S. W. 58; Dodge v. Pope, 93 Ind. 481; Young v. Hopkins, 6 T. B. Mon. 19; Linn v. Green, 17 Fed. 407.

3. The right of plaintiff to recover is not defeated by the fact that the conveyance was only a quitclaim deed. It is immaterial what covenants were in the deed. It is the fact that the plaintiff was induced by the false representations of the defendant to pay his money for the property that gives to plaintiff a cause of action, independent of the covenants in the deed. "It would be a reproach to the law to hold that a vendor who, by fraudulent representations, has induced a vendee to accept a quitclaim deed for land, can wholly escape liability for his fraud. The law ought to exact truth and honesty from vendors by quitclaim deeds as well as from those who give warranties of title. Of course, if the grantor in a quitclaim deed makes no false representations, he is not liable if the grantee acquires nothing by the deed. But in that case he is honest,—at least, does not deceive the vendee by misrepresentations. But when he induces the grantee, by falsehood, to accept a quitclaim deed, there is no rule of law or equity which will relieve him of liability for his fraud." Ballou v. Lucas, 59 Iowa, 24, 12 N. W. 745; Atwood v. Chapman, 68 Me. 38; Wardell v. Fosdick, 13 Johns. 325.

4. Plaintiff is entitled to recover damages, which, under the testimony, I assess in the sum of $3,000. Let judgment be entered accordingly.