### BYERS v. FEDERAL LAND CO. et al. *

(Circuit Court of Appeals, Eighth Circuit. December 1, 1924.)

No. 6581.

1. **Vendor and purchaser ⬿37(6)—Misrepresentation of ownership by vendor held immaterial.**

A representation by defendant that it was the owner of land which it contracted to "convey or cause to be conveyed" to plaintiff *held* not a material misrepresentation, which invalidated the contract, where defendant held a contract for the purchase of the land and, the owner advised plaintiff that on performance of his contract the land would be conveyed to him.

2. **Fraud ⬿11(2)—Statement of value of land ordinarily not representation of fact.**

A statement of the monetary value of property with no definite market value, such as mines or land, is generally made and understood as an expression of opinion only, and not as a representation of fact, and is not ordinarily an actionable misrepresentation.

3. **Vendor and purchaser ⬿37(4)—Purchaser held not entitled to rely on statement of value.**

A statement to a purchaser of the value of land, by agents for its sale, not shown to have been made in bad faith, *held* a statement of opinion only, on which the purchaser had no right to rely.

4. **Vendor and purchaser ⬿37(6)—Purchaser held entitled to rescind for failure of seller to give possession.**

An agreement by the seller of land under contract to give possession to the purchaser at once, and a lease of the land from him by the president of the selling corporation for a term of five years at a substantial rental, which lease he did not perform, where the seller was not in fact the owner of the land, nor in possession, and the purchaser was never given

*Rehearing denied February 16, 1925.

possession, *held* a material misrepresentation by conduct, which entitled the purchaser to rescission of the contract.

Appeal from the District Court of the United States for the District of Wyoming; T. Blake Kennedy, Judge.

Suit in equity by Charles E. Byers against the Federal Land Company and another. Decree for defendants, and complainant appeals. Reversed and remanded, with directions.

J. W. James, of Hastings, Neb. (James & Danly and J. E. Willits, all of Hastings, Neb., and Walton & Watts, of Cheyenne, Wyo., on the brief), for appellant.

Ray E. Lee, of Cheyenne, Wyo., for appellees.

Before STONE, Circuit Judge, and MUNGER and MILLER, District Judges.

MUNGER, District Judge. This suit was brought for the cancellation of a contract for the purchase of land. The parties will be designated as in the trial court. The defendant the Federal Land Company was a corporation organized under the laws of Wyoming and doing business at Cheyenne, Wyo. The other defendant, J. R. Carpenter, was its president. The plaintiff entered into a written contract on January 23, 1920, to purchase from the Federal Land Company 320 acres of land in Wyoming, for which he was to pay $2,800 in cash and a balance of $8,400, with interest, in 50 semiannual installments. In the contract the Federal Land Company agreed "to convey or cause to be conveyed" to the plaintiff the land mentioned when the plaintiff should have made these payments. The plaintiff was given the privilege, if he was not in default, of paying any amount on the contract at any interest-paying date.

This suit was begun September 15, 1922. The plaintiff's bill alleged the making of this contract, and prayed for its cancellation, and for recovery of the amounts he had paid under it. The grounds for his relief, shortly stated, were that the Federal Land Company had induced the plaintiff to sign this contract by fraudulently representing to him, contrary to the facts: (1) That the Federal Land Company was the actual owner of the land; (2) that it was in the actual possession thereof; and (3) that it was of the value of $35 per acre. The answers denied the making of these alleged representations. At the trial there was evidence that the real estate brokers acting as agents for the Federal Land Company had stated to the plaintiff, at the time of the preliminary negotiations leading up to the making of this contract, that the land was worth $35 an acre. The proofs were that the land was then worth about $15 per acre. The plaintiff lived at Hastings, Neb., several hundred miles from this land, which was situated about eight miles from Cheyenne, Wyo. The brokers, who made this statement as to value, also lived at Hastings and were engaged in the business of dealing in real estate. There was no relationship of special trust or confidence between them and the plaintiff, or between the vendor and the plaintiff. They also represented to the plaintiff that the Federal Land Company was the owner of this land. Before the contract was executed, the other defendant, Carpenter, who was the president of the Federal Land Company, came to Hastings, and he there executed the contract of sale on behalf of the Federal Land Company at the same time that the plaintiff signed it.

The written contract for the sale of the land contained no statement as to the possession of the land after its execution, except as implied in the covenant to convey the land when final payment had been made. There was no evidence of any direct statement to the plaintiff that the Federal Land Company was in possession of this land, but the plaintiff testified that the possession of the land was to be given at once upon the execution of the contract, and as a part of the same transaction there was a lease executed by the plaintiff to the defendant Carpenter of this land and of some adjoining land for a period of five years beginning on the March 1st following, at an annual cash rental of $1,000 per year, payable annually, with an agreement therein that Carpenter should cause to be broken 160 acres of the sod on the land agreed to be conveyed in 1920, and a like amount in 1921, for which he was to be paid from the rental.

The plaintiff had not seen this land prior to the contract and relied on the statements made by the agents and Carpenter. He saw the land in March, 1920. He paid the installment of the purchase price in September, 1920, when it was due, and paid the taxes due upon the land in the January following; but it was not shown that he knew the facts as to possession or value at these times. These facts and others were brought out in the testimony, and at the close of the plaintiff's evidence, the court sustained a motion by the defend-

ants to dismiss the plaintiff's bill on the ground that no actionable misrepresentations had been proved, and the plaintiff has appealed.

[1] It was undisputed in the evidence that the plaintiff had acted upon a representation on the part of the defendant Federal Land Company that this land was owned by it, but in fact the land was owned by another company. This company, however, had entered into a written contract with the Federal Land Company, prior to the date of the plaintiff's contract, to sell this land to the Federal Land Company, and it appeared that the land company which had agreed to sell the land to the Federal Land Company wrote several letters to the plaintiff, many months before this suit was brought, stating that a deed would be delivered to plaintiff at any time when he had complied with his contract. The plaintiff did not answer these letters. It was one of the essentials of the plaintiff's case to prove not only a misrepresentation, but a material misrepresentation. The plaintiff did not undertake to prove the inability of the Federal Land Company to comply with its contract to "convey or cause to be conveyed" this land. What evidence was given tended to indicate its ability and willingness to have the title conveyed to the plaintiff upon his compliance with his contract. The representation as to ownership was not a material misrepresentation to the plaintiff under these circumstances.

The representation as to the value of the land, as already stated, was made by the real estate brokers who lived in the same city as the plaintiff, in Hastings, Neb. He testifies that they told him the land was worth $35 an acre, was cheap at $35. He testified at one time that he relied on the representation as to ownership and possession and at another time that he relied on the representations. There was no evidence that suggested that these brokers had any special knowledge of or had ever seen this land, or that the plaintiff announced any special reliance on their statement of value.

[2] An honest opinion as to the monetary value of property, stated as an opinion is not a fraudulent misrepresentation (Hepburn v. Dunlop, 1 Wheat. 179, 189, 4 L. Ed. 65; Gordon v. Butler, 105 U. S. 553, 556, 26 L. Ed. 1166; Southern Development Co. v. Silva, 125 U. S. 247, 255, 256, 8 S. Ct. 881, 31 L. Ed. 678; Lehigh Zinc & Iron Co. v. Bamford, 150 U. S.

665, 673, 14 S. Ct. 219, 37 L. Ed. 1215), but a statement as an opinion, if it is not the real opinion may be a misrepresentation (Haygarth v. Wearing, L. R. 12 Eq. Cas. 327, 328; Kerr on Fraud and Mistake [3d Ed.] 51; 26 Corp. Jur. 1093–1219). A statement of the monetary value or worth of an article, although not expressly phrased as an opinion or estimate, may nevertheless be a representation of an opinion and not of a fact. This is especially true as to property without a definite or known value, or as to property which has only a speculative value. A statement of the value of property for which there is a generally accepted market price, such as bonds of the government, grain or cattle, may be a misrepresentation of a fact. Zimmern v. Blount, 238 F. 740, 151 C. C. A. 590. A statement as to value of property may also be actionable as a fraudulent representation of fact under some circumstances, where there is a special reliance placed upon it and superior knowledge on the part of the maker. Southern Trust Co. v. Lucas, 245 F. 286, 157 C. C. A. 478; 2 Pom. Eq. Jur. § 878. In such a case it may also be said that the statement of value when the value is known to be different from that stated is a fraudulent misrepresentation of an opinion as existing that does not exist. A statement of the monetary value of property with no definite market value such as a mine, an invention, old and used goods or of lands, is generally made and understood as an expression of opinion only, and not as representation of a fact, and is not ordinarily an actionable misrepresentation. Kimber v. Young, 137 F. 744, 749, 70 C. C. A. 178; Henderson v. Henshall, 54 F. 320, 329, 4 C. C. A. 357; Harvey v. Young, 1 Yelv. 21, 80 Eng. Rep. 15; Page v. Parker, 43 N. H. 363, 368, 80 Am. Dec. 172; Van Epps v. Harrison, 5 Hill (N. Y.) 63, 69, 40 Am. Dec. 314; Medbury v. Watson, 6 Metc. (Mass.) 246, 259, 39 Am. Dec. 726; Noetling v. Wright, 72 Ill. 390, 391; Cooper v. Lovering, 106 Mass. 77, 79; 1 Sug. on Vendors 3; 2 Black on Rescission, § 424; 35 L. R. A. 418; 37 L. R. A. 605.

[3] In this case there was no attempt to prove that the agents who stated the value of this land were acting in bad faith, or did not honestly believe that the land was worth what was represented as its value. It was a time of general speculation in lands and overestimates of value that subsequent events have proved extravagant were quite generally assigned to both ur-

ban and rural lands. For land of the nature of that involved here situated in a grazing region, somewhat unreliable for the raising of crops without irrigation, but located at a convenient distance from a city, the capital of the state, there was often a speculative, but real, sale value in excess of what is now regarded as the fair value at that time. But the purchaser of lands of this nature usually understands that no definite value can be assigned to such property, and that an expression of value is but an opinion, even though it is not stated as the thought, opinion, or estimate of the speaker. What was said by these brokers was evidently intended as but an opinion, and the plaintiff cannot be heard to say that he relied upon such an opinion.

[4] The remaining claim of misrepresentation relates to the possession of the land. While there was no statement, in words, that the Federal Land Company held possession of the land, the statement that possession would be given to the plaintiff at once, coupled with the making of the lease, whereby Carpenter assumed to take the land as lessee after the 1st of March, and to plough it, and to pay rent therefor to plaintiff for five years, was intended to convey the impression that possession was held by the Federal Land Company, and was surrendered to the plaintiff, and accepted from him by Carpenter, because a lease of lands ordinarily imports the transfer of possession. Thomas v. Railroad Co., 101 U. S. 71, 78, 25 L. Ed. 950; 35 Corp. Jur. 1139. The evidence shows that the Federal Land Company never had possession of this land, that the plaintiff was never given possession, and Carpenter did not offer to perform his part of the lease. A misrepresentation may be made by words, but it may also consist of conduct. Mudsill Min. Co. v. Watrous, 61 F. 163, 168, 9 C. C. A. 415; 2 Pom. Eq. Jur. § 877; 1 Bigelow on Fraud. 467; 26 Corp. Jur. 1067.

The misrepresentation as to the delivery of possession was material, because of the value of such possession during the long period that the contract might continue, and is evidenced by the substantial amount that Carpenter agreed to pay as yearly rent. In view of this false representation, and of the fact that plaintiff was not shown to have lost his right to ask for a rescission of his contract, the court should not have sustained the motion to dismiss the bill as to the Federal Land Company.

An order will be entered, remanding the case, with directions to enter a decree as prayed in plaintiff's bill against the Federal Land Company.