C. H. DAVIS and Shirley Lou Davis,
Appellants (Plaintiffs below),

v.

Lon SCHIESS and Nettie Schiess,
Appellees (Defendants below).

No. 3464.

Supreme Court of Wyoming.

July 21, 1966.

---

1. Baldwin v. Scullion, 50 Wyo. 508, 62 P.2d 531, 539, 108 A.L.R. 304.

**·20**

Peter M. Lowe, Salt Lake City, Utah, for appellants.

William S. Edmonds, Kemmerer, and Ted C. Frome, Afton, for appellees.

Before PARKER, C. J., and HARNS-BERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Action was brought for damages based on fraud and deceit in connection with the purchase of a motel, with a service station and cafe, at Afton, Wyoming.

The purchasers of the motel and plaintiffs in the action were C. H. Davis and Shirley Lou Davis. The vendors and defendants were Lon Schiess and Nettie Schiess. They made a counterclaim in the action, for reformation of the contract between the parties, seeking to change the purchase price to $85,000 instead of $75,000 as stated in the purchase agreement.

At first plaintiffs succeeded on trial to a jury and obtained a verdict for $21,000 damages. This verdict was set aside by the trial judge and a new trial was granted. A second attempted trial resulted in a mistrial because defendant Lon Schiess talked to jurors during court recesses. A third attempted trial also resulted in a mistrial because of illness on the part of plaintiffs' attorney. The final and last trial was to a jury with District Judge Glen G. Stanton presiding.

The last trial resulted in a directed verdict for defendants, on their motion therefor, following plaintiffs' case. Thereafter, the court proceeded without a jury to try

the issues involved in defendants' counterclaim for reformation of the contract. The reformation prayed for was granted and plaintiff-purchasers have appealed.

### The Fraud Question

■ Appellants recognize, according to their brief, that the basic elements of an action for fraud are (1) false representations by defendant of material facts; and (2) reliance thereon by plaintiff to his damage. See 37 C.J.S. Fraud § 3, p. 215.

The principal contention of the purchasers relative to false representations is that the defendant Lon Schiess told plaintiffs the motel was worth a minimum of $85,000. At the trial, plaintiffs offered the testimony of an expert witness who testified the property at the time of sale was worth $58,425. On that basis, plaintiffs consider they should have recovered damages of $26,575.

■ Since the early days of this court, it has followed the general rule that an expression of opinion as to value is not fraud. Otherwise stated, a statement which is but an expression of opinion is generally not held to be the representation of a fact. First National Bank of Cheyenne v. Swan, 3 Wyo. 356, 23 P. 743, 750; McDonald v. Mulkey, 32 Wyo. 144, 231 P. 662, 668. See also Twing v. Schott, 80 Wyo. 100, 338 P. 2d 839, 843.

In the absence of special circumstances, the same principle is followed in other jurisdictions.[1] For example, in Byers v. Federal Land Co., 8 Cir. 1924, 3 F.2d 9, 11, where agents represented land to be worth $35 an acre and the proofs were it was worth about $15 an acre, the court said a statement as an opinion, if it is not the real opinion may be a misrepresentation; but an honest opinion as to value is not a fraudulent misrepresentation.

The court pointed out, in the Byers case, that it is especially true as to property without a definite or known market value that the expression of an opinion as to value will not be considered a fraudulent misrepresentation of fact. That would be the situation in the case at bar, where the motel had no established market value.

In Byers, there was no attempt to prove the agents who stated the value of the land were acting in bad faith, or did not honestly believe the land was worth what was represented as its value. Likewise, in our case, there was no attempt to prove Lon Schiess acted in bad faith or that he did not honestly consider the motel worth $85,000.

■ We cannot look beyond the record in this case and speculate as to whether it was or was not the real opinion of Lon Schiess that his property was worth at least $85,000 when he so stated to the purchasers. We can only say the plaintiffs have failed to offer any substantial evidence to show bad faith or to show the expression of value was not Schiess' real opinion. The testimony of plaintiffs' expert witness that the value of the motel at the time of sale was $58,425 falls short of being evidence of bad faith on the part of defendants, or that Schiess did not honestly consider the motel worth $85,000.

### Motel Earnings

Another fraudulent representation claimed by plaintiffs, according to the issues as settled at pretrial conference, is the following:

"That the motel had a gross income of $12,000.00 to $14,000.00 per year and netted $10,000.00 to $11,000.00 per year having approximately $3,000.00 of expenses; whereas in truth and in fact, the motel property had a gross income of less than $10,000.00 per year and netted between $3,000.00 and $4,000.00 per year."

In support of their claim, plaintiffs offered in evidence the income tax returns of

---

1. For cases from neighboring states which recognize this general principle see Oberg v. Sanders, 111 Utah 507, 184 P.2d 229; Horner v. Wagy, 173 Or. 441, 146 P.2d 92; Tyler v. Hartford Acc. & Indem. Co., 195 Okl. 523, 159 P.2d 722; Cox v. Westling, 96 Cal.App.2d 225, 215 P.2d 52; Holland v. Lentz, 239 Or. 332, 397 P.2d 787; and Apolito v. Johnson, 3 Ariz.App. 232, 413 P.2d 291.

defendants for the years 1955 and 1956. Plaintiffs testified, however, that prior to completing the purchase, the motel register had been turned over to them for examination. When the register was returned, the Davises informed the Schiesses there was a difference between what had been said and what the motel register showed.

At this point, it was explained by Mrs. Schiess, according to testimony of Mrs. Davis, that the motel register did not represent the entire income, and that some of the earnings were not entered in the register or reported on tax returns. Mrs. Davis further testified a request was made to see the books, but Mr. Schiess would not show them.

■ It seems clear, then, from the testimony of the Davises themselves that they knew neither the register nor income tax returns reflected all earnings of the motel. Consequently, the tax returns, in and of themselves, did not prove the falsity of Schiess' representations.

Admittedly, plaintiffs examined the motel, station and cafe extensively with regard to the business being done prior to purchasing the property. Also, it is undisputed that plaintiffs lived about three doors north of the motel for 14 years, and for some 25 years Mr. Davis operated an implement business diagonally across the street and approximately 150 yards from the motel.

■ It becomes apparent from this set of circumstances—where the Davises knew the motel register and tax returns showed less income than was claimed; where the Schiesses were not willing to show their books; and where the Davises themselves personally investigated and observed the volume of business being done—that purchasers relied upon their own observations and knowledge of the business being done, and not upon representations which they claim the Schiesses made.

Therefore, not only did plaintiffs fail to offer substantial evidence of false representations pertaining to earnings, but their proofs tended to refute any reasonable presumption of reliance upon such representations.

■ Counsel for appellees has deemed it necessary to discuss matters which apparently were in controversy during the trial, such as the condition of the roof, the condition of plumbing and of a sign and of linens, and whether the motel was an all-weather motel. We find none of these matters raised in the points listed by appellants for our consideration. In the absence of such matters being urged by appellants on appeal, we will not discuss them.

### Reformation

■ The issue arising on defendants' counterclaim as to whether the total purchase price of the motel property was to have been $85,000 or $75,000, we think, has become moot.

During pendency of litigation a receiver was appointed for the property. After judgment was entered and without apparent objections from plaintiffs, the receiver made his report and was discharged; and the property was turned over to defendant Lon Schiess.

The judgment itself allowed plaintiffs 30 days within which to redeem the motel property by paying what was adjudged to be the unpaid balance of the purchase price, i. e., $44,000 plus interest. It was provided in the judgment that in case plaintiffs failed to pay the unpaid balance in full within 30 days, the plaintiffs and all persons claiming under them would be forever barred and foreclosed of all equity of redemption.

No deficiency judgment was awarded against plaintiffs, and it is apparent no effort was made to redeem. Therefore, except for a possible claim that plaintiffs were denied full opportunity to redeem, it becomes unimportant whether the unpaid balance at the time of judgment was $44,000 plus interest (based upon a purchase price of $85,000), or $34,000 plus interest (based upon a purchase price of $75,000).

■ It being apparent that plaintiffs did not object to the receiver being dis-

charged and to the property being returned to the possession of defendant Lon Schiess, and plaintiffs having made no effort through a supersedeas bond or otherwise to maintain the status quo with respect to possession of the property, we think they have waived any right to claim further redemption rights.

■ The equitable estate vested in purchasers under a contract for sale of realty may be lost by abandonment; and such abandonment may be inferred from the circumstances or actions of the purchasers evincing a clear intent to abandon. Asher v. Hull, 207 Okl. 478, 250 P.2d 866, 870–871. See also Hull v. Clemens, 200 Or. 533, 267 P.2d 225, 232–233.

■ In the case before us, the Davises made two of the ten annual installments due under their purchase contract. Thereafter, they elected not to make further payments and instead brought an action against the vendors based on alleged fraudulent representations. They have not at any time, in connection with this action, indicated a desire to redeem nor offered to pay the balance admitted by them to be owing under the contract.

Under these circumstances, it seems apparent to us purchasers have abandoned their rights under the contract. In any event, it would be proper, under the equitable principle that he who seeks equity must do equity, to deny affirmative relief such as a further right to redeem, in the absence of a tender or offer to pay the balance admitted to be due. See Auld v. Cobb Exchange Bank, 204 Ga. 729, 51 S.E.2d 635, 637; Machado v. Flores, 75 Cal.App.2d 759, 171 P.2d 440, 442; and Py v. Pleitner, 70 Cal.App.2d 576, 161 P.2d 393, 396.

### Conclusions

■ In addition to matters we have discussed, appellants claim error was committed by the district court when it set aside the verdict of the jury in the first trial and granted a new trial. This question necessarily involves sufficiency of plaintiffs' proofs in the first trial to support the verdict. The question is whether or not sufficient evidence was adduced in the first trial for a prima facie case of fraudulent representations.

In oral argument to us, counsel for appellants agreed the evidence in the first trial and the evidence in the last trial were substantially the same. Our examination of the transcripts discloses no evidence in the first trial which could have made a more favorable result for plaintiffs. In other words, based on the evidence adduced at the first trial, it would have been proper for the court to have granted a judgment for defendants notwithstanding the verdict of the jury, with respect to the issue of fraudulent representations on the part of defendants.

Appellees have presented to us a number of questions regarding whether certain transcripts are properly before us, and concerning the failure of appellants to comply with proper appellate procedures. In view of the fact, however, that we are disposing of the case on its merits, it will not be necessary for us to discuss any of these claims on the part of appellees.

■ It having been suggested that appellee Lon Schiess died on May 30, 1966, this decision is made effective as of May 27, 1966, the next court day prior thereto. This is done in accordance with the principle established in First Nat. Bank in Creston v. Gorman, 45 Wyo. 519, 21 P.2d 549, 552, and followed in Parsley v. Wyoming Automotive Company, Wyo., 395 P.2d 291, 297.

Affirmed.