Searls, C.
The plaintiff herein, Catherine Senter, and William A. Senter were husband and wife. The former brought an action for a divorce, and for a division of the community property. Pending the action, the parties agreed upon the manner in which the community property should be divided, by the terms of which, as plaintiff claims, she was to have a ranch upon which the parties had formerly resided, known as the Home Place.
The Home Place consisted of lot 4 of the Santa Teresa rancho, and also of a tract of land of about twenty acres inclosed therewith, and forming a part of said Home Place.
The decree of the court, which awarded this property to plaintiff, and to which she assented, described the Home Place as lot 4, etc., thus omitting therefrom the twenty-acre parcel thereof. ,
The contention of plaintiff is, that she was induced by the false and fraudulent representations of defendant to suppose, and did suppose, that lot 4 included the whole of the Home Place, and that her assent to the division of the property as provided in the decree was based on such belief.
This action is brought to amend and reform the decree *619 so as to include and award to plaintiff the twenty acres of land, and to set aside as fraudulent a conveyance thereof by defendant to one Sophia L. Morey, who is also made a party defendant.
The cause was tried by the court without, a jury, written findings filed, and judgment rendered thereon in favor of plaintiff as prayed for in her complaint.
The appeal is from the judgment, and from an order denying a new trial.
It is contended by appellant that the facts as found by the court show that in the divorce case counsel for plaintiff was possessed, and had at hand or within reach, the means of information by which to determine accurately the extent and boundaries of the Home Place, so called, and that the plaintiff cannot therefore recover.
The answer to this position is, that, conceding plaintiff to be bound by the knowledge of her attorney, it appears that in fact the attorney believed lot 4 to include the whole of the Plome Place; and while he might- have learned of his mistake by reference to maps and information in his own office and in the records of the county, that he applied to the defendant for information on the subject, and the latter, seeing and knowing that plaintiff’s attorney was mistaken, knowingly and fraudulently misled him by falsely stating that lot 4 did cover the whole of the Home Place.
Had defendant remained silent when asked by the attorney if lot 4 included the whole of the Home Place, it may well be doubted if he could be held, as it would then have been the duty of the attorney of plaintiff to use the information at hand, or means within his reach, for obtaining correct information; but when he suppressed inquiry and misled plaintiff’s attorney by a false statement as to a material fact, which the latter believed and acted upon, the case is somewhat different.
Whatever the means of knowledge of the attorney may have been, it is patent that he was not correctly in *620 formed; and as to facts not within his knowledge, he had a right to rely upon the information of the defendant, and the latter cannot escape responsibility by showing that plaintiff’s attorney might have ascertained that such representations were untrue. (Bank of Woodland v. Hiatt, 58 Cal. 234; Smith v. Richards, 13 Pet. 36; Bench v. Sheldon, 14 Barb. 67; Mead v. Bunn, 32 N. Y. 275; 2 Kent’s Com. 484; Perry on Trusts, secs. 179, 180.)
This view does not conflict with the doctrine that the seller is at liberty to avail himself of his superior knowledge in dealing with the purchaser without rendering himself liable. To gainsay that doctrine would tend to retard trade, and to place the man of superior knowledge, judgment, skill, and acumen on the same plane with the most ignorant and negligent, and by depriving the former of the fruits of his energy and skill, would so hamper legitimate trade as to make it scarcely worth pursuing.
It maintains that doctrine, but at the same time holds that the seller must not resort to artifice, fraud, or falsehood in misleading the buyer as to facts of which the latter is ignorant, and which are material for him to know.
If A is the owner of a ship absent on a perilous voyage, long overdue at her destined port, under circumstances raising a presumption that she may be lost by perils of the sea, and B, who has learned that such ship has sought safety in another and distant port, which fact is unknown to A, purchases the vessel from A at a reduced price, he has availed himself of his superior knowledge, has practiced no deception, and is not liable; but in the same case, suppose B had represented to A that the vessel was wrecked, the latter believing the statement to be true, and the former knowing it to be false, and that he had then purchased her for a trifle, can it be doubted that he would be liable to A? We think not. He was not bound to speak, and might have *621 maintained silence, but when he elected to speak, he was bound to utter the truth, and having failed to do so, to the damage of A, he is liable.
The case of Board of Commissioners v. Younger, 29 Cal. 172, cited by appellant, was one in which the defendant had made no representations of any kind to the plaintiff, except that in a petition for the purchase of the land, and in a deed prepared by his agent and presented for execution, the land was described by courses, and distances and by metes and bounds, and concluding with these words, “ containing about seventy-two acres of land,” and the court held: 1. That with the means at hand furnished by the courses and distances and metes and bounds of the deed, and by the opportunities which the plaintiff had in common with the defendant for ascertaining the quantity of the land, and in view of the fact that quantity is as a rule mere matter of description, which must give way to courses and distances, which in turn must yield to metes and bounds, there was no such misrepresentation of a material fact as entitled plaintiff to recover; and 2. That a failure by defendant to state that another was in possession of a portion of the premises conveyed, with knowledge that plaintiff had adopted a rule not to sell occupied land except to the occupant, was not such a fraudulent suppression of a material fact as entitled plaintiff to recover.
Hawkins v. Hawkins, 50 Cal. 558, was a case in which the plaintiff signed a written contract without reading it, and this court held, in affirming the judgment of the court below sustaining a demurrer to the complaint, that where no relation of confidence or trust existed between the parties to the contract, and where the means of knowledge were equally open and accessible to both, it was the duty of plaintiff to have read the contract, or to have it read to him, before signing, and having failed to do so, he could not recover.
The substance of a long line of authorities upon what *622 we may, for convenience’ sake, term this side of the case is to be found at page 484 of volume 2 of Kent’s Commentaries, where he says: “The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or of careless indifference to the ordinary and accessible means of information.”
This doctrine is entirely compatible with that class of cases in which a party is held liable for having by false and fraudulent representations as to material facts prevented the opposite party from seeking the information which he did not possess, and which but for such representations he might have obtained.
Such seems to have been the effect of defendant’s representations in this instance, and we are of opinion the court below did not in this respect err in its conclusion as to defendant’s liability upon the facts.
The testimony in support of the findings was ample, and we see no error for which the cause should be reversed, unless it be found in a failure of the court to find upon one of the material issues presented by the pleadings.
The facts necessary to a comprehension of the question involved are as follows:—
Plaintiff in her complaint avers that prior to the entry of the decree in the divorce case, she and the defendant Senter agreed to compromise all property questions and the division thereof in said action for divorce, and to withdraw the same from the consideration of the court, in case a divorce should be granted, and then proceeds to show how under such agreement the property was to be divided. The answer in response to such allegations is as follows:—
“ Defendants deny that said defendant Senter and plaintiff ever made any agreement, whatever which was in terms dependent upon a judgment or decree divorcing *623 them being obtained; but on the contrary, defendants allege that while the action for divorce mentioned in said complaint was pending, said defendant Senter and plaintiff agreed that a judgment divorcing them should be obtained in said action, and that said defendant Senter should and would make no contest or opposition to such action, or to the plaintiff obtaining a decree of divorce in such action, and such agreement was made a part of and was the consideration of each and every agreement or compromise ever entered into between said defendant Senter and plaintiff concerning or relating to the division or segregation of their community property.”
The court finds:—
“ That while said action was pending, and before any appearance therein by said William A., to wit, on or about the - day of January, 1881, said William A. proposed to the plaintiff, Catherine, through her attorney, J. A. Yoell, to divide their said common property between them, and to withdraw from the consideration of the court in said action for a divorce all questions relating to or affecting the division of said common property.
“That pursuant to said proposition, it was then and there agreed between said William A. and said Catherine, that the personal property should be and was divided in a certain manner, and that said real estate known and called the Home Place should be allotted to and taken by the plaintiff, Catherine, as and for her separate estate.”
The finding further proceeds to show what property defendant was, under the agreement, to have, and that the agreement was carried out by the decree; and this is the only finding responsive to the issue there made.
In Beard v. Beard, 65 Cal. 354, the plaintiff had transferred certain property to the defendant, his wife, in consideration of her executing to him four notes, and securing the same by a mortgage, “ and abandoning her *624 defense in an action for divorce then pending between them, and doing nothing to resist or prevent or delay him in obtaining a decree of divorce thereinand this court held that the agreement of the wife with respect to the divorce proceeding was a fraud upon the court, and as it constituted an essential and inseparable part of the consideration, the entire transaction became tainted by-fraud, and no action would lie to enforce the payment of the notes.
From the doctrine of Beard v. Beard, supra, and many other cases which might be cited of the same tenor and to the same effect, we think the issue made by the answer was essential to the disposition of the cause, and should have been passed upon by the court.
We understand counsel for respondent to, tacitly at least, concede this proposition; but his position is, that the finding by the court of a specific contract in fact negatives the existence of any other or different contract.
It is true that the substance only of the issue need be found, and that in many instances the finding that an alleged contract contained certain terms and conditions, and showing directly or by fair intendment that the whole contract is given, the presumption will not only be indulged that it contained no other terms and conditions, but also, in the absence of a showing to the contrary, that no other and different contract existed.
The averments of the complaint and answer do not differ materially as to the manner in which the property of the spouses was under their agreement to be divided. Indeed, except as to the alleged fraud of the defendant in the description of the Home Place, whereby twenty acres of the land, parcel thereof, was omitted, there is no question made.
The real defense is founded upon the consideration of the agreement. Defendant alleges that apart of the consideration was, that a judgment divorcing them should be obtained in the action then pending and undetermined, *625 and that he (the defendant) should and would make no contest or opposition to such action, or to the plaintiff obtaining her decree of divorce.
Under these circumstances, the vital question is not, What was the contract? but, What was the consideration upon which it was founded?
Suppose A and B enter into a contract for an immoral .purpose, or to perform an act in contravention of public policy, or to defraud a third party,—in all these cases the contract may be admitted or proven, and yet the law cannot pronounce upon its validity until the purpose or the fraudulent intent is determined. The intent will sometimes appear from the contract itself; when it does, it is sufficient; but more frequently such is not the case, and then it is necessary to go beyond its mere terms in determining its validity.
A brings suit against B, and avers that the latter agreed in writing to pay him five hundred dollars.
B answers and sets up that the only consideration for the agreement was a promise on the part of A that he would assassinate 0.
The parties admit, or what is the same thing, the proofs show, that the contract was made, and the court is asked to pronounce judgment; manifestly it could not do so without first passing upon the fact of the consideration. That issue has become the chief factor in the problem.
In such a case, the fact that a contract was entered into, standing as a special verdict, would not warrant a judgment; and under our system of requiring written findings by the court (unless waived) in causes tried without a jury, it is considered that the findings of fact should cover all the issues, and be so far-reaching that if turned into a special verdict they would support a judgment.
The system of implied findings which prevailed under the act of 1861 has no place under the Code of Civil Procedure.
*626 To this rule there is the exception that when a defense is tendered by a party, upon which no evidence is offered at the trial, and upon which there is no finding, the issue will be deemed immaterial, and the cause will not be reversed for want of such finding. This exception is based upon the idea that a cause will not be reversed for want of a finding which, had it been made, must have been adverse to appellant.
We have scanned the record carefully, and find no testimony whatever in support of the defense indicated.
We are therefore of opinion the judgment and order appealed from should be affirmed.
Foote, 0., and Belcheb, C. C., concurred.
The Court.
For the reasons given in the foregoing opinion, the judgment and order are affirmed.
Hearing in Bank denied.