[Civ. No. 611.   Second Appellate District.—December 31, 1908.]

F. W. EICHELBERGER et al., Appellants, v. MILLS LAND AND WATER COMPANY, a Corporation, and TITLE GUARANTEE AND TRUST COMPANY, a Corporation, Respondents.

VENDOR AND PURCHASER — RESCISSION OF PURCHASE — FRAUDULENT REPRESENTATIONS—DIMENSIONS OF LAND—RELIANCE OF PURCHASER —OPPORTUNITY OF MEASUREMENT.—In an action to rescind a contract for the purchase of land for substantial failure of consideration, and for fraudulent representations of the vendor, as to the dimensions and quantity of the land purchased, on which plaintiffs relied, believing them to be true, and without which they would not have made the purchase, the mere fact that before the purchase the proposed purchasers were shown the land, and had opportunity to make exact measurements, cannot preclude their right to rely upon the vendor's representations as to its dimensions, made for the purpose and design of inducing them to enter into the contract, and which were incorporated in the contract, and were well calculated to prevent plaintiffs from making any surveys or investigation as to the true dimensions.

ID.—OWNER PRESUMED TO KNOW BOUNDARIES AND AREA OF LAND— FALSE REPRESENTATIONS—FRAUD IN LAW UPON PURCHASER.—As a general rule, in the absence of facts showing the contrary, the owner of land is presumed to know the boundaries and area of his land, and a purchaser thereof from him is warranted in relying upon the owner's representations as to the area, whether as to acreage or dimensions, and if his representations concerning the same are false, they operate as a fraud in law upon the purchaser.

ID.—MERE MEANS OF KNOWLEDGE OF PURCHASER INSUFFICIENT TO REMOVE FRAUD IN LAW.—The mere existence of opportunities for examination, or of sources of information, or the means of obtaining knowledge of the falsity of the representations relied upon as true by the purchaser, cannot remove the fraud in law arising therefrom, where the only question is as to the purchaser's right to rely thereupon, and no question of laches is involved.

ID.—MAP ATTACHED TO CONTRACT AS EXHIBIT—INCORRECT DESCRIP-
TION—DESCRIPTION BY METES AND BOUNDS.—The fact that a map
attached to the contract as an exhibit gave an incorrect description
of the dimensions of particular lots, but gave no statement of quan-
tity thereof, was not designed to put plaintiff upon inquiry, when
the general dimensions of the whole land shown thereon by metes
and bounds accords with the false representations made to the
purchasers by the owner.

ID.—RELIEF IN EQUITY FOR FRAUD UNAFFECTED BY SUSPICIOUS CIRCUM-
STANCES.—Courts of equity will not withhold relief from parties
ignorant of the true condition, who, relying upon false representa-
tions of material facts made for the purpose of inducing assent, are
thereby inveigled into contracts, upon the ground that there are
circumstances calculated to arouse suspicion and cause an investiga-
tion whereby they might have discovered the swindle.

ID.—LIABILITY OF FRAUDULENT VENDOR UNAFFECTED BY PURCHASER'S
LACK OF DILIGENCE.—The liability of the vendor arises from its
own fraud and false representations, and is unaffected by the ques-
tion of diligence or the want of it on the part of the purchasers in
availing themselves of the opportunity afforded of determining the
size of the tract of land, or their failure to give heed to such
warning as the exhibition of the map afforded of defendant's dis-
honesty.

ID.—JUDGMENT UNSUPPORTED BY FINDINGS—JUDGMENT NOT AWARDABLE
TO PLAINTIFFS—FAILURE TO FIND UPON MATERIAL ISSUE AS TO
WIDTH OF LAND.—*Held,* that, while the findings do not support the
judgment rendered for the defendants, the judgment cannot be
ordered for plaintiffs upon the findings, on account of the failure
of the court to find upon the material issue as to the actual width
of the land necessary to show actual and appreciable damage to
the plaintiffs.

ID.—RESCISSION FOR FRAUD NOT SUSTAINABLE WITHOUT DAMAGE.—In
order to sustain the rescission of a contract for fraud, some actual
and appreciable damage to the plaintiff must appear.

ID.—INSUFFICIENT FINDING AS TO WIDTH OF LAND.—A finding that the
tract of land was less than two hundred and fifty feet in width,
without showing the exact or approximate width thereof, is insuffi-
cient to show a material failure of consideration, or actual and ap-
preciable damage to the plaintiffs.

ID.—BOUNDARY OF LAND BORDERING ON OCEAN—WIDTH NOT ESTAB-
LISHED.—Private land bordering on the ocean extends to the line
of high-water mark at ordinary or neap tides, unaffected by wind
or wave; and a finding as to the width of the land, measured at
each end thereof to the point of extreme reach of the wash of the
waves, and of a different width to the highest point of tide level,
without specifying what tide is intended, whether the high spring
equinoctial tides, or the spring tides occurring twice in every month,

or the ordinary neap tides occurring twice in every twenty-four
hours, is insufficient to establish the width of the land.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a new trial. W.
P. James, Judge.

The facts are stated in the opinion of the court.

Oscar C. Mueller, and Percy R. Wilson, for Appellants.

Anderson & Anderson, for Mills Land and Water Company,
Respondent.

E. W. Sargent, for Title Guarantee and Trust Company,
Respondent.

SHAW, J.—This is an action to rescind a contract made
with defendant Mills Land and Water Company whereby
plaintiffs agreed for a stipulated sum, payable as therein
specified, to buy certain real estate described in said contract,
and to recover a cash payment made to said Mills Land and
Water Company on account of said purchase; also, to pro-
cure the repayment of certain moneys and the surrender and
cancellation of certain notes paid to and deposited with de-
fendant, Title Guarantee and Trust Company (a corpora-
tion), to be held by it in escrow pending the consummation of
such purchase.

The contract was made on July 6, 1905, and the land is de-
scribed therein as follows:

"All of that certain said property of the party of the first
part, being blocks numbered seven (7), eight (8), nine (9), ten
(10), and eleven (11), as shown upon the copy of a map
hereto attached and marked 'exhibit A,' the said property
being more particularly bounded and described as follows, to
wit:

"A piece or parcel of land situated in the county of Orange,
state of California, and being a portion of section 14, T. 6 S.,
R. 11 W., S. B. B. and M. Said piece or parcel of land being
more particularly described as follows, to wit:

"Beginning at a point 157.8 feet north 53° 06' west of
where the east line of section 14 is intersected by a line 30
feet northeasterly from and parallel to that certain strip of
land 40 feet in width conveyed by the Stearns Rancho Com-
pany and Rob't J. Northam to the Santa Ana & Newport

Railway Company by deed recorded in book 44 of deeds, records of Orange County, California, at page 66 thereof; thence from said point of beginning north 53° 06' west on a line parallel to and 30 feet northeasterly from the northeasterly line of said strip of land 40 feet in width, 1400 feet to a point; thence south 36° 54' west 270 feet a little more or less to the Pacific Ocean; thence easterly along the Pacific Ocean 1400 feet to a point; thence northeasterly 270 feet a little more or less to the point of beginning.

"The foregoing description to be made more certain by survey of the property to be hereafter had."

The contract called for the payment of $1,000 in cash (which was duly paid), and specified that the balance of the purchase price should be in cash and promissory notes of plaintiffs paid and delivered upon deposit of the contract and necessary instructions and escrow papers with said Title Guarantee and Trust Company. By the contract the Mills Land and Water Company covenanted that it would, on or before six months from the date thereof, convey the property therein described to plaintiffs free and clear of any encumbrances other than as therein mentioned, provided "that in the event for any reason the party of the first part (Mills Land and Water Company) should be unable within six months from the date hereof to furnish the party of the second part a clear title to said property, the party of the second part shall have the option of rescinding his contract and of recovering from the party of the first part all payments with legal interest made hereunder, but the party of the first part shall not be held to any other or further liability in the premises than the return of such payments."

The grounds upon which plaintiffs base their right to a rescission are: First, a partial though substantial failure of consideration; second, that the execution of the contract on their part was procured by false and fraudulent representations made to them by the defendant Mills Land and Water Company as to the quantity of land contained in the tract of real estate so purchased by them, and upon which representations they relied, believing them to be true, and without which they would not have made said purchase.

Both contentions are based upon the alleged fact that the defendant Mills Land and Water Company, prior to the execution of the contract, represented to plaintiffs that the land

in question consisted of a tract fourteen hundred feet in length and two hundred and seventy feet in width, which dimensions, a little more or less, were likewise called for and specified in the contract; that as a matter of fact said tract of land so owned by the Mills Land and Water Company, and all which it was able to convey, did not exceed one hundred and seventy feet in width by fourteen hundred feet in length.

The court made its findings of fact, from which, as a conclusion of law, it found that plaintiffs were entitled to take nothing, and thereupon gave judgment for defendants. Plaintiffs appeal from the judgment, and an order denying their motion for a new trial.

The court made findings from which it appears that defendant, Mills Land and Water Company, pending the negotiations which culminated in the making of the written contract to purchase, represented to plaintiffs that it was the owner in fee simple of the unencumbered title to the land in question, which consisted of a tract fourteen hundred feet in length bordering upon the Pacific Ocean, by a width of two hundred and seventy feet, a little more or less. That at the time it made the representations said defendant had knowledge of the fact that the said tract of land which it had agreed to convey was not of the dimensions as represented by it, and said defendant knew it could not convey title thereto. That relying upon said representations, and not otherwise, plaintiffs agreed to purchase said land; that they would not have purchased the same had they known said tract was less than as represented by said defendant. That pursuant to said agreement the parties entered into a written contract wherein said land was particularly described in accordance with the representations as to the area thereof so made by said defendant, to which contract was attached a map upon which was delineated the blocks specified in the general description contained in the contract. That notwithstanding the fact that said defendant had knowledge that said tract of land was less than of the dimensions so represented by it and so specified in said contract, it presented to plaintiffs a certificate of title containing a map falsely showing a tract of land of the dimensions called for in said contract, and by such presentation of such certificate falsely represented to plaintiffs that said tract of land was of the dimensions specified in said contract, and that it had title to and was able to convey the same. The plaintiffs did not learn that the tract of land owned by said defendant

and which they agreed to purchase was of less dimensions than as described in the contract until after the execution thereof, and that plaintiffs did not know the dimensions of said tract of land nor anything regarding the dimensions thereof, other than the facts stated to them by said defendant, except the knowledge which plaintiffs obtained by being shown the monuments, physical features and marks upon the ground. It further appears that the tract of land is situate between the Pacific Ocean and the right of way of the Los Angeles Interurban Railway, the line of which right of way was fixed, easily visible and ascertainable, and that upon said land were monuments and marks whereby the boundaries of said tract could be shown or disclosed, and other physical features easily discernible and in plain view, and that plaintiffs prior to the execution of the contract visited the land and were shown the boundaries thereof and had opportunity to observe, measure and ascertain the true dimensions of the tract of land; that there was shown to plaintiffs a map like the one attached to said contract, but said map did not correctly represent the quantity and extent of said land.

Appellants contend that the findings clearly disclose actual fraud on the part of defendant, within the meaning of section 1572, Civil Code, which section defines actual fraud as consisting of ''any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, by one having knowledge or belief of the fact.'' This contention may be accepted as correct; indeed, we do not understand that respondents controvert the proposition. Section 1689 of the Civil Code provides that a party to a contract may rescind if his consent thereto was obtained by fraud. Section 1568, Civil Code, provides that consent is deemed to have been obtained through fraud ''only when it would not have been given had such cause (fraud) not existed.'' Counsel for respondents contend that plaintiff's consent to the contract was not induced by fraudulent representations found to have been made by defendant, but that said contract was made by plaintiffs without regard to defendants' representations. In other words, plaintiffs did not act upon defendants' statements as to the

dimensions of the tract of land, but visited the land upon which, as found by the court, were monuments and marks whereby the boundaries of said tract could be shown or disclosed, and that plaintiffs were shown the land and had opportunity to observe, measure and ascertain the true dimensions thereof. While plaintiffs *could have* ascertained the dimensions of the tract from these monuments and physical marks upon the land, and had opportunity so to do, it clearly appears from the findings that they did not avail themselves of such opportunity, for the court expressly finds ''that the plaintiffs did not, nor did either of them, know the dimensions of said land nor anything regarding the dimensions thereof other than the facts stated as aforesaid to them by defendant, Mills Land and Water Company, and other than the knowledge which the plaintiffs obtained by being shown the monuments, physical features and marks upon the ground.'' These monuments, physical features and marks upon the ground so found to *have been shown* to plaintiffs did not convey to them any information as to the fact that the parcel of land was of less dimensions than as represented by defendant, or described in the contract; for the court finds ''that plaintiffs would not have purchased said property described in said contract had they *known* that said tract of land was less in area than as represented by said defendant, Mills Land and Water Company.''

The effect of these findings is that plaintiffs, instead of measuring the land and for themselves ascertaining the dimensions thereof, as they could have done, chose rather to rely upon the representations of defendant in relation to the same. Were they justified in so doing? As the representations were made prior to the transaction and directly related to it, it must be presumed that they were made for the purpose and with the design of inducing plaintiffs to enter into the contract. (Pomeroy's Equity Jurisprudence, sec. 880.) As a general rule, the owner of real estate, in the absence of facts showing the contrary, is presumed to know the boundaries and area of his land, and a buyer is warranted in relying upon his representations in respect to such facts. It is immaterial whether the representations as to area be as to acreage or dimensions.

In the case of *Roberts* v. *French,* 153 Mass. 60, [25 Am. St. Rep. 611, 26 N. E. 416], it was represented to the purchaser that one of the lines of a parcel of land was one hundred and

seven feet long, whereas it was only ninety-five and a half feet long.   In discussing the effect of this representation the court says: "The statement of the length was a statement, as of the party's own knowledge, of the kind which our decisions pronounce fraudulent. . . . When a man conveys the 'notion of actual admeasurement,' . . . his statement has a stronger tendency to induce the buyer to refrain from further inquiry than a statement of the contents of a lot without giving grounds for the estimate."

In *Stevens* v. *Giddings,* 45 Conn. 507, the line of a lot was represented as being one hundred feet, whereas it was only ninety-five and a half feet.   In its opinion, the court says: "The controlling factor in this case is that there was a material deficiency in the quantity of land sold. . . . It would be altogether unusual for the purchaser to measure the depth of a lot after the seller by his circular had represented it to be of a certain depth, and his agent . . . had positively asserted at the time of the sale that it was of that depth. . . . We think the defendant had the right to rely on the representations of plaintiff and on the declarations of the auctioneer."

In *Lynch* v. *Mercantile Trust Co.,* 18 Fed. 486, it is said: "The owner of property, when he sells, is presumed to know whether the representation which he makes about it is true or false, and the positive statement thus made of a material fact, if false, is a fraud in law.   A purchaser trusts in the owner's statements, and the law will assume that the owner knows his own property and truly represents it."

In *Quarg* v. *Scher,* 136 Cal. 406, [69 Pac. 96], the contract described the land by metes and bounds and as "containing about forty acres, more or less."   It was afterward ascertained by survey that the acreage in the tract was but twenty-three and a half acres.   The court in rendering its opinion said: "It is next insisted that the defendant saw the land and inspected it before making the contract, and having every opportunity to learn of the quantity of the land, he had no right to take the word of plaintiffs on the question of quantity; in other words, that the rule of *caveat emptor* applies to the case.   This contention is not well founded; the defendant had a right to rely on plaintiffs' representation as to the quantity of land.   The acreage of land is a thing that cannot be seen with the eye at a glance, but can only be ascertained with accuracy by scientific measurement, and when a vendor states

to a vendee the amount of land in the tract which is the subject of the sale, such vendor will not thereafter be heard to say in a court of equity the vendee had no right to believe him. (*Pringle* v. *Samuel,* 1 Litt. (Ky.) 43, [13 Am. Dec. 214].)"

In the absence of any inquiry instituted by plaintiffs for the purpose of ascertaining the dimensions of the land, and in the absence of knowledge as to the true dimensions, both of which facts appear from the findings, plaintiffs were warranted in relying upon the representations in that regard made to them by the seller, Mills Land and Water Company. (*Wainscott* v. *Occidental etc. Assn.,* 98 Cal. 253, [33 Pac. 88].) As said by Mr. Pomeroy in his work on Equity Jurisprudence, section 895: "The *mere existence of opportunities* for examination or of sources of information is not sufficient"; and further quoting from the same section: "*An opportunity or means of obtaining knowledge is not enough.*"

Respondents further insist that the facts disclosed by the map found by the court to have been shown plaintiffs, a copy of which was attached to the contract, were such as to indicate to them as reasonably prudent men that the tract of land was not as represented and described in the contract; that notwithstanding the fraudulent representations, such map and the facts disclosed thereby was a warning which they neglected to heed, and hence they should not afterward be heard to complain, for the reason that their own conduct contributed to the injury. Reference to this map discloses that delineated thereon are blocks 7, 8, 9, 10 and 11, designated in the general description contained in the contract to which it was attached; that these blocks were two hundred and fifty feet in length, measured substantially parallel with the line of the beach, and of a width of one hundred and seventy feet; that they were separated by unmarked spaces (presumably streets) twenty-five feet in width and of a length corresponding with the width of the blocks; that on the ocean side of said blocks was a space of ten feet as indicated, marked "Board walk," between which and the water line was an unmarked space of twenty feet; on the other or land side of said blocks extending the length thereof was a strip of land the width of which was one hundred feet measured from the boundary line of said blocks to a line marked, "Curve to connect proposed right of way," etc. This strip of land fourteen hundred feet in length and one hundred feet in width was

designated upon said map as "reserved for right of way for railroads."

In view of the fact that the court found that this map did not correctly describe the land, that it is apparent that the subject of the contract was not five separate and distinct blocks one hundred and seventy feet in width and of an aggregate length of twelve hundred and fifty feet, and that no facts were shown by the map which would indicate that defendant owned less land than as represented, we are unable to find anything in connection therewith calculated to arouse suspicion on the part of plaintiffs as to the falsity of defendant's representations that it did own and was selling to plaintiffs a parcel of land of a width of substantially two hundred and seventy feet; added to which is the fact that this general description by blocks is controlled by the more particular description following, whereby the tract is described by metes and bounds in full accordance with the representations theretofore made.

In support of this contention respondents cite *Dillman* v. *Nadlehoffer,* 119 Ill. 567, [7 N. E. 88], but an examination of the opinion discloses that whatever may have been the representations as to the validity of the patents, which were the subject of the sale, the vendor inserted a clause in the contract to the effect that he did not warrant their validity, nor guarantee that they were not an infringement of existing patents. "It shows," says the court, "conclusively that the contingency of the patents ultimately proving to be invalid in law was in the minds of both contracting parties, and this was expressly provided for in the agreement." "In such case the seller cannot be held liable for a false representation where nothing appears to show, as is the case here, that the seller has been guilty of any artifice or other means to prevent the purchaser from examining and judging for himself." The case at bar is readily distinguished from that case in that the false representations as to dimensions were incorporated in the contract, and the representations were well calculated to prevent plaintiffs from making any surveys or investigation as to the true dimensions.

It is true, as contended by respondents, that the courts of this state have said that "the means of knowledge is equivalent to knowledge, and that a party who has the opportunity of knowing the facts constituting the fraud of which he complains cannot be supine and inactive and afterward allege a

want of knowledge that arose by reason of his own laches or negligence." (*Shain* v. *Sresovich*, 104 Cal. 405, [38 Pac. 51]; *Lady Washington ·C. Co.* v. *Wood*, 113 Cal. 487, [45 Pac. 809].) But the question concerning which such statement was made was whether or not the action had been brought within three years after the discovery of the fraud. Hence, this language can have no application to the case at bar.

Courts of equity will not withhold relief from parties ignorant of the true condition who, relying upon false representations as to material facts made for the purpose of inducing assent, are thereby inveigled into contracts, upon the ground that there were circumstances calculated to arouse their suspicion and cause an investigation whereby they might have discovered the swindle. The liability of the defendant arises from its own fraud and false representations, and is unaffected by the question of diligence on the part of plaintiffs in availing themselves of the opportunity afforded for determining the size of the tract of land, or their failure to give heed to such warning as the exhibition of the map afforded of defendant's dishonesty. (*Bank of Woodland* v. *Hiatt*, 58 Cal. 234; *Wenzel* v. *Shulz*, 78 Cal. 221, [20 Pac. 404]; *Hanscom* v. *Drullard,* 79 Cal. 234, [21 Pac. 736]; *Merguire* v. *O'Connell*, 103 Cal. 50, [36 Pac. 1033]; *Morris* v. *Courtney*, 120 Cal. 63, [52 Pac. 129]; *Senter* v. *Senter*, 70 Cal. 619, [11 Pac. 782]; *Eaton* v. *Winnie*, 20 Mich. 156, [4 Am. Rep. 377]; *Wilson* v. *Higbee*, 62 Fed. 723; *Strand* v. *Griffith*, 97 Fed. 854; *Cawston* v. *Sturgis*, 29 Or. 331, [43 Pac. 656]; *Steen* v. *Weisten* (Or.), 94 Pac. 834; *Estes* v. *Odom*, 91 Ga. 600, [18 S. E. 355]; *Cottrill* v. *Crum*, 100 Mo. 397, [18 Am. St. Rep. 549, 13 S. W. 753].)

While the findings do not support the judgment rendered by the court in favor of defendants, they are, by reason of the court's failure to find upon a material issue, likewise insufficient to support a judgment for plaintiffs.

The ground upon which the right to rescind is based is twofold, namely, on account of the fraudulent representations, and for a partial failure of consideration. Fraud, in order to warrant the rescission of a contract, must be accompanied by some appreciable loss or damage; for "courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral and involving no pecuniary or tangible injury" (*Wainscott* v. *Occidental etc. Assn.*, 98 Cal. 253, [33 Pac. 88]); and where the right to rescind is based upon a

failure of consideration such failure must be in a material respect. (Civ. Code, sec. 1689, subd. 4.) It is alleged in the complaint that the tract of land so represented to be two hundred and seventy feet in width did not in fact exceed one hundred and seventy feet in width, which allegation is negatived by the averments of the answer. The court finds the tract of land to be less than two hundred and seventy feet, but does not find as to the exact, or even approximate, width thereof. Hence, it cannot be determined from the findings whether the deficiency in width so found to exist is such as to entitle plaintiffs to rescind the contract on account of appreciable loss or damage, nor whether the width is sufficiently less to constitute a material failure of consideration. It is true the court finds by finding VIII the tract of land to be "fourteen hundred feet long bordering upon the Pacific Ocean, and the same had a width at the westerly end of about one hundred and sixty-eight feet, and a width at the other end thereof of about one hundred and seventy feet, measured at each end thereof to the point of extreme reach of the wash of the waves; that the width of said land to the highest point of tide level was approximately thirty-five feet more at the easterly end than the said width of one hundred and seventy feet, and approximately fifty-five feet more at the westerly end than said width of one hundred and sixty-eight feet aforesaid." This is not a finding as to the width of the tract, for the reason that neither "the point of extreme reach of the wash of the waves" nor "the highest point of tide level" constitutes the boundary line of lands bordering on the ocean. "The law takes notice of three kinds of tides, viz.: 1. The high spring tides, which are the fluxes of the sea, at those tides which happen at the two equinoctials; 2. The spring tides, which happen twice every month, at the full and change of the moon; 3. The neap, or ordinary tides, which happen at the change and full of the moon, twice in twenty-four hours." (Angell on Tide Waters, p. 68; *Teschemacher* v. *Thompson*, 18 Cal. 11, [79 Am. Dec. 151].) Tide lands are such as are covered and uncovered by the flow and ebb of the ordinary or neap tides (*Ward* v. *Mulford*, 32 Cal. 365; *People* v. *Morrill*, 26 Cal. 336, 354), and constitute the seashore (*Storrer* v. *Freeman*, 6 Mass. 435, [4 Am. Dec. 155]), over which the state exercises control and ownership by virtue of its sovereignty. (Hall on Rights to the Sea.) The land extending to the line

indicated by high-water mark at ordinary or neap tide is the subject of private ownership.

The line to which the flow of the water reaches at ordinary or neap tide, unaffected by wind or wave, not the line of extreme high tide nor extreme reach of the wash of the waves, constitutes the boundary line between the tract of land in question and the Pacific Ocean. Accepting finding XII, to the effect that defendant is unable to convey more land than the width of one hundred and seventy feet at one end and one hundred and sixty-eight feet at the other end, as a finding of fact and not a conclusion of law, it is nevertheless predicated upon a measurement shown by finding VIII to have been erroneously made, as heretofore stated.

It follows that the judgment and order appealed from must be reversed, and it is so ordered.

Allen, P. J., and Taggart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 30, 1909.